UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ARTHUR LEE LEWIS,<br><br>     Plaintiff,<br><br>v.<br><br>DANIEL MANIER,<br>WAYNE MOE,<br>ROBERT MIEHLKE, III,<br>MATTHEW JAMES ADAMS,<br>PALO SOAVE,<br>BRANDON KARSEN,<br>ANDREW MOLDENHAUER,<br>CHRISTOPHER MOERSCHELL,<br>JOHN DOE,<br>COUNTY OF OAKLAND, and<br>MICHAEL BOUCHARD,<br><br>     Defendants. | Case No. 2:15-cv-10363<br>Honorable Laurie J. Michelson<br>Magistrate Judge Michael J. Hluchaniuk |

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS [14]**

Where, as here, defendants move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as fact the non-conclusory allegations of the complaint. Under that standard, Plaintiff Arthur Lewis was beaten by nine officers of the Oakland County Jail for no reason and, when he filed a complaint about the beating, Oakland County (or its sheriff) did nothing to investigate. On these facts, Defendants are not entitled to have Lewis's complaint dismissed at this time, the doctrines restricting municipal liability and shielding state actors from liability notwithstanding.

I.

A.

The following description of events is as Lewis alleges them to have occurred. *See Hunter v. Sec'y of United States Army*, 565 F.3d 986, 992 (6th Cir. 2009).

On February 15, 2013, Lewis was arrested, arraigned, and brought to the Oakland County Jail. (Am. Compl. ¶¶ 19–20.) During intake at the jail, Defendant Wayne Moe, one of the jail's officers, ordered Lewis to remove his clothing. (*Id.* ¶ 22.) After Lewis had removed his boots, Moe directed Lewis to pick them up. (*Id.*) Lewis did not immediately comply. (*Id.*) So, Moe or another officer, Defendant Daniel Manier, ordered Lewis to put his clothes back on and then "escorted [Lewis] to another area of the jail, away from other inmates, and told him to [again] remove his clothing." (*Id.* ¶¶ 23–24.)

After Lewis finished removing his clothing, nine of the individual defendants in this lawsuit (Moe, Manier, Robert Miehlke, Matthew Adams, Paol Soave, Brandon Karsen, Andrew Moldenhauer, Christopher Moerschell, and John Doe) "surrounded" Lewis, "pushed" him, and "forced him to the ground." (Am. Compl. ¶ 25.) The jail officers then "struck him with their hands, feet and knees, and violently forced [Lewis's] arms behind his back." (*Id.*) At the time of this attack, Lewis was not resisting the officers nor did he provoke their attack. (*Id.* ¶ 27.) Lewis suffered "four broken ribs, two dislocated shoulders, as well as bruises, contusions, and abrasions on his head, face and body." (*Id.* ¶ 28.) The beating was captured by a jail security camera. (*Id.* ¶ 26.)

Shortly after the attack, Lewis was released from jail on bond. (Am. Compl. ¶ 29.)

Within two days of his release, Lewis filed a formal complaint with Defendant County of Oakland and Defendant Michael Bouchard, the County's sheriff. (Am. Compl. ¶¶ 14, 31.) The

complaint included a copy of Lewis's medical records documenting his injuries. (*Id.* ¶ 31.) Neither Bouchard nor the County investigated Lewis's complaint. (*Id.* ¶ 32.)

After Lewis lodged his complaint, Manier, in an alleged attempt to conceal the beating, obtained a warrant charging Lewis with one count of assaulting a prison employee, *see* Mich. Comp. Laws § 750.197c. (Am. Compl. ¶ 33.) Later, a charge of resisting or obstructing a police officer, *see* Mich. Comp. Laws § 750.81d, was added. (*Id.*) Lewis was acquitted of the former charge but convicted of the latter. (*Id.* ¶ 34.)

**B.**

About a year-and-half later, in January 2015, Lewis filed this lawsuit. (*See* Dkt. 1.) His Amended Complaint asserts that the nine jail employees conspired to beat him and then beat him in violation of the "Fifth, Eighth and Fourteenth Amendments" of the United States Constitution. (Am. Compl. ¶¶ 35–44, Counts I, II.) This same conduct is alleged to amount to conspiracy and assault and battery under state law. (*See* Am. Compl. ¶¶ 45–52, Counts III, IV.) Additionally, Lewis says that Oakland County and its sheriff, Bouchard, are liable for their failure to adequately train and supervise the jail employees and for acquiescing in or ratifying their conduct. (*See* Am. Compl. ¶¶ 53–57, Count V.)

All defendants (save the still-unserved John Doe officer) maintain that Lewis's allegations, even if accepted as fact, do not render them liable. (*See generally* Dkt. 14, Defs.' Mot. to Dismiss.) So each seeks dismissal of Lewis's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

**II.**

When a defendant moves to dismiss pursuant to Rule 12(b)(6), the plausibility standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556

U.S. 662 (2009), governs. Under that standard, a court first culls legal conclusions from the complaint, leaving only factual allegations to be accepted as true. *Iqbal*, 556 U.S. at 679. The inquiry then becomes whether the remaining assertions of fact "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678. Although this plausibility threshold is more than a "sheer possibility that a defendant . . . acted unlawfully," it is not a "'probability requirement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). Whether a plaintiff has presented enough factual matter to "'nudg[e]'" his claim "'across the line from conceivable to plausible'" is "a context-specific task" requiring this Court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 683 (quoting *Twombly*, 550 U.S. at 570).

### III.

### A.

Lewis has not alleged that Oakland County Sheriff Bouchard in any way directly participated in the beating leading to this lawsuit. Instead, Lewis has sued Bouchard in his official capacity, along with Oakland County, under a municipal liability theory. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

There are several ways to succeed on such a claim, but all require Lewis to show that the beating took place pursuant to a policy or custom of Oakland County. *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). Some of Lewis's allegations suggest that he believes that the County and Bouchard have a policy of failing to adequately train their employees, including the officers who worked at the County's jail. (*See* Am. Compl. ¶ 54.) Others suggest that he believes that Bouchard and Oakland County have a custom of tolerating or acquiescing to the conduct that occurred at the jail. (*See id.*) But both types of claims require a showing of prior instances of

4

misconduct, i.e., a pattern or history of excessive force. *See Burgess*, 735 F.3d at 478. Yet Lewis's Amended Complaint contains no such allegations.

Stronger for Lewis is his allegation that Bouchard and Oakland County failed to investigate the officers' beating of Lewis and thereby "ratified" their conduct. (*See* Am. Compl. ¶¶ 54, 55.) In this regard, Lewis alleges that despite filing a formal complaint supported by medical records demonstrating considerable injuries, the County and Bouchard engaged in absolutely no investigation of his complaint. (*See* Am. Compl. ¶¶ 31–32, 55.) And he couples these allegations with the Sixth Circuit's decision in *Marchese v. Lucas*, 758 F.2d 181 (6th Cir. 1985).

*Marchese* involved "dramatic" facts. *Id.* at 182. During Salvatore Marchese's arrest, he pointed a gun at the arresting officer. *Id.* Although the officer was able to secure the gun and complete the arrest without incident, when Marchese arrived at the county jail, he was "greeted by a group of angry deputies with shouts of 'cop killer.'" *Id.* A frightened Marchese fled, but the officers caught him and beat him. *Id.* Then later on the night of his arrest, "a deputy having possession of the key to [Marchese's] cell opened the door" to allow someone into the cell to beat Marchese for a second time. *Id.* When Marchese appeared before a state-court judge to face his criminal charges, the judge noticed Marchese's physical condition and ordered a sheriff's representative to investigate how the injuries came about. *Id.* at 184. Despite this order, no investigation took place. *See id.*

In considering whether these specific facts supported Marchese's claim that the county and its sheriff were liable, the Sixth Circuit focused on the lack of investigation. In particular, the Court of Appeals explained, "Not only do the facts show that there was official toleration, (if not complicity in instigation) of the midnight assault on the part of the command officers on duty at

5

the station house that night; but there was also subsequent concealment followed by a complete failure to initiate and conduct any meaningful investigation on the part of the Sheriff himself." *Marchese*, 758 F.2d at 187–88. The Court held that given the assault by officers, the fact that there was no "serious investigation to discover the perpetrators or official sanctions against their conduct" meant that the county sheriff had "ratif[ied]" the illegal acts, exposing both the sheriff and the county to liability under *Monell*. *Id.* at 188–89.

It appears that *Marchese* remains good law. *See Loy v. Sexton*, 132 F. App'x 624, 627 (6th Cir. 2005) (citing *Marchese* for the proposition that "the failure to investigate may give rise to § 1983 supervisory liability"); *Jones v. City of Taylor*, No. CIV. 14-11847, 2015 WL 4603228, at *11 (E.D. Mich. July 30, 2015) (acknowledging *Marchese*'s ratification theory but distinguishing *Marchese* on the facts); *but see Salvato v. Miley*, 790 F.3d 1286, 1298 (11th Cir. 2015) ("*Marchese* was decided before the Supreme Court issued its decision in [*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988)], which clarified the requirements for municipal liability under section 1983."). But its holding is limited: "Plaintiff broadly reads *Marchese* as holding that any failure to investigate a report of police misconduct creates municipal liability and in effect, by-passes the requirements of [*Monell*]. Such an interpretation of *Marchese* is illogical." *Tompkins v. Frost*, 655 F. Supp. 468, 472 (E.D. Mich. 1987); *see also Morrison v. Bd. of Trustees of Green Twp.*, 529 F. Supp. 2d 807, 825 (S.D. Ohio 2007) (citing *Tompkins* and explaining, "inferring a municipal-wide policy based solely on one instance of potential misconduct runs dangerously close to the collapsing of the municipal liability standard into a simple *respondeat superior* standard" (internal quotation marks omitted)).

This Court thus understands *Marchese* to control only where state officers are accused of major unlawful conduct, there is some evidence supporting the accusation, and a policymaking

official for the municipality tasked with investigating that conduct completely fails to do so. *See Marchese*, 758 F.3d 188–89 ("The Sheriff is . . . the law enforcement arm of the County and makes policy in police matters for the County."); *Walker v. Norris*, 917 F.2d 1449, 1457 (6th Cir. 1990) ("The case before us, however, differs from *Marchese* in two crucial respects. First, in *Marchese*, 'there was, in fact, no serious investigation conducted' by any supervisory officials. . . . Second, we imposed the broad investigative responsibilities outlined in *Marchese* upon the sheriff in his official capacity."). If a plaintiff demonstrates those remarkable events, i.e., that the policymaker responsible for investigating major, unconstitutional conduct in fact concealed it, it is reasonable to infer that the municipality (through that policymaking official) has ratified the conduct. *See Burgess*, 735 F.3d at 478–79 ("A plaintiff can make a showing of an illegal policy or custom by demonstrating . . . that an official with final decision making authority ratified illegal actions. . . . [O]n a single-act theory, a plaintiff must demonstrate that a deliberate choice to follow a course of action is made from among various alternatives by the official responsible for establishing final policy with respect to the subject matter in question. Moreover, that course of action must be shown to be the moving force behind or cause of the plaintiff's harm." (internal quotation marks and citation omitted)).

Given that Lewis's allegations largely mirror the facts of *Marchese*, the Court believes that Lewis has adequately pled a claim against Bouchard and Oakland County. Lewis says that he was severely beaten by nine officers of the Oakland County Jail for no reason (save, perhaps, for not immediately picking up his boots), that he filed a formal complaint with Oakland County and Bouchard about the beating (presumably the entities tasked with handling such a complaint), that he supported his complaint with medical records evidencing his injuries from the beating, and that neither Oakland County nor Bouchard responded to his complaint or did anything to

investigate it. (Am. Compl. ¶¶ 24–28, 31–32.) These *Marchese*-esque allegations, coupled with *Iqbal*'s directive that "plausibility" is not a "probability" requirement, are enough to permit Lewis to engage in discovery on his ratification theory.[1]

Bouchard and Oakland County seek to hasten this process: they have attached a memorandum to their reply brief that supposedly shows that Oakland County in fact performed an investigation into the alleged beating. (Dkt. 18, Defs.' Reply at 6–7 & Ex. B.) Bouchard and Oakland County invite the Court to consider this document despite that it is not referenced in the Amended Complaint and that their motion tests only the adequacy of that pleading. (*See* Defs.' Reply at 6 n.3.) The Court declines their offer. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (providing that a court may consider "items appearing in the record of the case and exhibits attached to defendant's motion to dismiss *so long as they are referred to in the Complaint* and are central to the claims contained therein" (emphasis added)); *Cooper v. Countrywide Home Loans, Inc.*, No. 14-CV-14137, 2015 WL 1541852, at *3 (E.D. Mich. Apr. 7, 2015) ("Countrywide argues that the Servicing Transfer Letter is central to Plaintiff's claims, but since it is not referred to in the Amended Complaint, it does not qualify for the [*Bassett*] exception.").

Neither Bouchard nor Oakland County is entitled to dismissal at this stage of the case.

## B.

Eight of the nine Oakland County Jail employees that Lewis accuses of beating him (Adams, Karsen, Manier, Miehlke, Moe, Moerschell, Moldenhauer, and Soave) also move for dismissal. (The ninth is the unserved John Doe.) They do so on three bases: that the delayed-

---

[1] The Court by no means suggests that discovery is appropriate on all theories of municipal liability. *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

8

accrual rule of *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Lewis's federal-law claims, that they are qualifiedly immune from a lawsuit based on Lewis's federal claims, and that Lewis's state-law claims are barred by governmental immunity. (*See* Defs.' Mot. at 11–18.) The Court considers these defenses in turn; all fall short of justifying dismissal.

1.

The officers argue that for Lewis to show that they used force prohibited by the Constitution, he needs to show that he did not assault, resist, or obstruct them. (*See* Defs.' Mot. at 11–14.) But, say the officers, Lewis's conviction under Michigan Compiled Laws § 750.81d(1) shows just the opposite. (*See id.*) Thus, the officers conclude, the Supreme Court's decision in *Heck* bars Lewis's claims of unconstitutional force brought pursuant to 42 U.S.C. § 1983. (*See id.*)

Defendants are correct that, under *Heck*, if success on a § 1983 claim would "necessarily" show that a state-court conviction is invalid, that § 1983 claim is "not cognizable" until the state-court conviction is invalidated. *See Heck*, 512 U.S. at 486–87. And the officers are also correct that Lewis's conviction required proof beyond a reasonable doubt that he "assault[ed], batter[ed], wound[ed], resist[ed], obstruct[ed], oppose[d], or endanger[ed]" an officer. *See* Mich. Comp. Laws § 750.81d(1).

But that is as far as Defendants' *Heck* argument goes—which is not far enough. The officers refuse to acknowledge the facts supporting Lewis's conviction under § 750.81d(1). As pled in Lewis's Amended Complaint, Lewis was found to have engaged in obstruction or resistance for not immediately picking up his boots when Moe ordered him to do so. (Am. Compl. ¶ 33; *see also* Pl.'s Resp. to Mot. to Dismiss at 12–14.) Yet, to succeed in this lawsuit, Lewis only needs to show that *after* he failed to completely comply with Moe's order, Moe or

9

Manier took him to a secluded area of a jail where nine officers employed unreasonable force—beat him without provocation or resistance. Proving that would not show that he complied with Moe's order to pick up his boots. *See Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010) ("The mere fact that the conviction and the § 1983 claim arise from the same set of facts is irrelevant if the two are consistent with one another."). And even assuming that the officers' conduct was provoked by Lewis's failure to comply with Moe's order, this would still not mean that the officers' use of force was reasonable. *See Schreiber*, 596 F.3d at 334 ("[I]n Michigan, one can be convicted under § 750.81d(1) simply for a 'knowing failure to comply with a lawful command,' and the mere failure of Schreiber to obey a police order would not have made the force Moe allegedly used reasonable." (citation omitted)).

The officers' reliance on *Heck* does not support dismissal.

**2.**

Their qualified-immunity defense to Lewis's claims under the Constitution also fails. After quoting almost two full pages of law on qualified immunity, the officers' argument based on that doctrine reduces to this: "Defendants respectfully submit that Plaintiff has not, and cannot, establish a violation of his constitutional rights. As established above, Plaintiff cannot establish an excessive force claim under the Fourth Amendment because his claims are barred by *Heck*, supra, and because the facts fail to support such a claim." (Defs.' Mot. at 16.) The Court has addressed the former assertion. As to the latter, the Court fails to see how nine officers allegedly striking Lewis until he had four broken ribs and two dislocated shoulders—all without Lewis resisting them—would not amount to a violation of clearly-established law. *See Grawey v. Drury*, 567 F.3d 302, 314 (6th Cir. 2009) ("The general consensus among our cases is that

officers cannot use force . . . on a detainee who . . . is not resisting arrest."). But this is exactly what Lewis has pled in his Amended Complaint. (Am. Compl. ¶¶ 25–28.)

At this stage of the case, none of Adams, Karsen, Manier, Miehlke, Moe, Moerschell, Moldenhauer, or Soave is entitled to qualified immunity.

**3.**

The same reasoning disposes of the officers' claim to governmental immunity. True, unlike qualified immunity, Michigan's immunity doctrine does not only shield officers from damages resulting from their objectively reasonable decisions, but also shields them from subjectively reasonable ones. *Brown v. Lewis*, 779 F.3d 401, 420 (6th Cir. 2015). In other words, governmental immunity "protects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent." *Odom v. Wayne Cnty.*, 760 N.W.2d 217, 229 (Mich. 2008). Even so, given that Lewis alleges he was not resisting at the time he was surrounded by nine jail employees, it is at least plausible that the officers acted with malice when, says Lewis, they broke his ribs and dislocated his shoulders. And plausibility is enough at this stage of the case. *Iqbal*, 556 U.S. at 678.

**IV.**

For the reasons given, the Court DENIES Defendants' Motion to Dismiss (Dkt. 14).

SO ORDERED.

                                   s/Laurie J. Michelson
                                   LAURIE J. MICHELSON
                                   UNITED STATES DISTRICT JUDGE

Dated: November 13, 2015

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on November 13, 2015.

                                           s/Jane Johnson
                                           Case Manager to
                                           Honorable Laurie J. Michelson